[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16950
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 13, 2009
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 08-01791-CV-BBM-1,
02-74770-BKC-MH

IN RE:  GEORGE PETER PROTOS,

                                                                        Debtor.

_____

GEORGE PETER PROTOS,

                                                            Plaintiff-Appellant,

versus

GARY A. SILVER,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 13, 2009)

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Appellant-debtor George Peter Protos ("Appellant") appeals the district court's Order affirming the bankruptcy court's Memorandum of Opinion denying him a discharge pursuant to 11 U.S.C. § 727, specifically subsections (a)(2), (a)(3), (a)(4), and (a)(5). Because the bankruptcy court did not clearly err in denying Appellant's discharge, we affirm.

## I.

Protos filed for Chapter 7 bankruptcy protection on December 16, 2003.[1] He filed his Schedules and Statement of Financial Affairs ("SOFA") on December 31, 2004, as required by Federal Rule of Bankruptcy Procedure 1007(b). Appellee Gary A. Silver ("Appellee") filed an adversary proceeding against Protos, seeking to deny him a discharge. Specifically, the Appellee based his request for a denial of discharge on alleged false oaths, undisclosed transfers of property, fraudulent transfers of property, and the withholding of information.

On September 8, 2004, the bankruptcy court granted the Appellee's motion for summary judgment and denied the Appellant a discharge. The district court,

---

[1] Protos filed his bankruptcy petition before the enactment and effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Neither party asserts that BAPCPA applies here.

2

however, reversed on August 23, 2005, finding that section 727 involved questions of fact and credibility determinations of the Appellant that the court must resolve after a hearing. On remand from the district court, the bankruptcy court held a five-day bench trial, beginning in October of 2006 and ending in February of 2007. On April 9, 2008, the bankruptcy court issued a Memorandum of Opinion and Judgment, denying a discharge. The Appellant appealed, and the district court affirmed. The Appellant appealed to us and we have jurisdiction under 28 U.S.C. § 158(d).

**II.**

"As the second court of review of a bankruptcy court's judgment, we independently examine the factual and legal determinations of the bankruptcy court and employ the same standards of review as the district court." *In re Int'l Admin. Services, Inc.*, 408 F.3d 689, 698 (11th Cir. 2005) (quotation marks and citations omitted). As such, we independently examine the bankruptcy court's factual findings for clear error and review *de novo* the legal determinations of both the bankruptcy and district courts. *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993). "A factual finding is not clearly erroneous unless 'this court, after reviewing all of the evidence, [is] left with the definite and firm conviction that a mistake has been committed.'" *Int'l Admin. Services*, 408 F.3d at 698 (quoting

3

*Lykes Bros., Inc. v. U.S. Army Corps of Engineers*, 64 F.3d 630, 634 (11th Cir. 1995)). Neither we nor the district court, however, may make independent factual findings. *JLJ Inc.*, 988 F.2d at 1116.

**III.**

The Appellant argues that the district court erred in affirming the bankruptcy court's ruling that denied him a discharge pursuant to sections 727(a)(2), (a)(3), (a)(4), and (a)(5). "A party who objects to a discharge has the burden to prove the objection by a preponderance of the evidence." *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008) (per curiam) (citing *Grogan v. Garner*, 498 U.S. 279, 289-91 (1991)); *In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984) ("At trial, the party objecting to a discharge has the burden of proving the objection.") (per curiam); *Rice v. Matthews*, 342 F.2d 301, 303 (5th Cir. 1965). "Once the creditor has met this burden, the debtor must bring forward enough credible evidence to dissuade the court from exercising its jurisdiction to deny the debtor discharge based on the evidence presented by the objecting party." *Jennings*, 533 F.3d at 1339 (quotation marks, alteration, and citation omitted); *Chalik*, 748 F.2d at 619 (addressing specifically section 727(a)(4)). A finding against the Appellant under any single subsection of section 727 is sufficient to deny him a discharge. *See generally* 11 U.S.C. § 727 (using the disjunctive "or"). We will consider each subsection in turn

4

and we do so in the same order as the district court.[2]

*A. Section 727(a)(4)*

Pursuant to section 727(a)(4), a court shall grant a debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account. . . ." 11 U.S.C. 727(a)(4)(A). "Deliberate omissions by the debtor may also result in the denial of a discharge." *In re Chalik*, 748 F.2d at 618. "To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991) (per curiam).

The bankruptcy court found that Protos's schedules contained material omissions and inaccuracies. In particular, the bankruptcy court denied discharge based on the failure to disclose or improper disclosure of: (1) a security interest owned by a law firm, Weinstock & Scavo ("Weinstock"), that arose from the law firm's representation of the Appellant in an arbitration with the Appellee in another litigation; (2) the transfer of furnishings in property referred to as the "Lake House" to Pam Protos, Protos's ex-wife; (3) pending litigation in Ohio; (4)

---

[2] Common to his arguments as to each subsection, the Appellant argues that the bankruptcy court and the district court erred by finding that he operated as an alter ego of some of his corporations. While the district court used alter ego language, the bankruptcy court made no such finding. Rather, the bankruptcy court found that the Appellant retained a role in some of his businesses that he transferred to Ms. Protos, which sheds light on, *inter alia*, his fraudulent intent. As such, we reject the Appellant's argument regarding alter ego.

liabilities in First Capital Bank ("FCB"); (5) the transfer of Portman-Protos

Development Corporation ("PPDC") to Ms. Protos; (6) a Wachovia bank account

with *de minimis* funds; and (7) that an attorney and friend of the Appellant (Dave

Green) who ran one of his companies prepared a financial statement on his behalf

that the Appellant failed to disclose in his SOFA. The Appellant argues that the

factual findings do not establish the requisite intent ("knowingly and fraudulently")

and that any omission was not material.[3] We disagree.

First, as to intent, the Appellant asserts that he lacked fraudulent intent as the

Weinstock security interest and the Ohio litigation because he disclosed them but

did so in the wrong place in his schedules and SOFA. He further asserts that he

disclosed the FCB liabilities to his bankruptcy counsel and that there is no

evidence that such information was "intentionally omitted." The bankruptcy court

documented several occasions in which the Appellant either failed to make a

disclosure or made an improper disclosure. The Appellant does not dispute the

factual findings, but rather he attempts to explain away each instance as

inadvertence, oversight, or the fault of his bankruptcy counsel. While a single,

---

[3] The district court (and both parties) cite to the Fifth Circuit for the requirements to deny a discharge pursuant to section 727(a)(4), requiring a creditor to prove: (1) that the debtor made a false statement under oath; (2) that the debtor knew that the statement was false; (3) that the debtor made the statement with fraudulent intent; and (4) that the false statement related materially to the bankruptcy case. *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

isolated instance of non-disclosure or improper disclosure *may* not support a finding of fraudulent intent, we find that the repeated nature of non-disclosures and improper disclosures made by the Appellant in his schedules and SOFA supports the bankruptcy court's finding of fraudulent intent.

Second, as to materiality, the Appellant asserts that his failure to disclose the transfer of PPDC to his ex-wife and the Wachovia bank account were immaterial because the former "was a shell with no assets" and the latter contained only "36.09." However, false oaths regarding worthless assets may bar the discharge of debts. *See Chalik*, 748 F.2d at 618 ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious.").

Accordingly, we find that the bankruptcy court did not err when it denied the Appellant a discharge pursuant to section 727(a)(4)(A).

*B. Section 727(a)(5)*

Pursuant to section 727(a)(5), a court shall grant a debtor a discharge unless "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5). "The question of whether a debtor satisfactorily explains a loss of assets is a question of fact."

*Chalik*, 748 F.2d at 619.

The bankruptcy court found that the Appellant failed to adequately explain a loss of assets, specifically a transfer of stock in Protos Properties, Inc. ("PPI") and the transfer of the furnishings in the Lake House, both to Ms. Protos. The Appellant argues that the bankruptcy court committed clear error. He asserts that he transferred the stock to comply with his divorce obligations and the transfer occurred more than one year prior to his filing for bankruptcy. The Appellant also asserts that DBI transferred the furnishings in the Lake House to Ms. Protos, not him.

We find that the bankruptcy court did not commit clear error. As to the stock transfer, even if we accept the Appellant's explanation that he transferred the stock of PPI to comply with divorce obligations, the bankruptcy court still found that the Appellant continued to serve as President of PPI before filing for bankruptcy and continued to advise Ms. Protos with respect to the day-to-day business of PPI after filing for bankruptcy, even executing documents as PPI's President. The Appellant's continued involvement in PPI casts doubt on his explanation that he lost assets. Moreover, Appellant's assertion that the stock transfer occurred more than one year prior to his filing for bankruptcy does not somehow eliminate the stock transfer from serving as the basis for a denial of

8

discharge. We have previously rejected this argument and do so again here.[4] *See In re Hawley*, 51 F.3d 246, 249 n.1 (11th Cir. 1995) ("Appellant also asserts that the loss of assets must occur within a year's time in order to deny a discharge under 11 U.S.C. § 727(a)(5). At the outset, we find that neither § 727(a)(5) nor [*Chalik*] support such a contention."). As to the transfer of furnishings, the bankruptcy court found that the Appellant continued to use the assets of DBI for his own personal benefit by living in the furnished house even after the purported transfer of assets to Ms. Protos. Further, the bankruptcy court documented the Appellant's historical practice of using the assets of DBI for his personal needs. Moreover, the Appellant has failed to provide any documentation to support his explanation of the transfer. *See Chalik*, 748 F.2d at 619 ("Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." (citations omitted)).

Accordingly, we find that the bankruptcy court did not err when it denied the Appellant a discharge pursuant to section 727(a)(5).

*C. Section 727(a)(3)*

Pursuant to section 727(a)(3), a court shall grant a debtor a discharge unless

---

[4] The Appellant cites no support for the one-year limitation. Presumably, the Appellant borrowed the one-year limitation found in section 727(a)(2)(A) and applied it to subsection (a)(5).

"the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]"  11 U.S.C. § 727(a)(3).  Subsection (a)(3) does not contain a fraudulent intent requirement.

The bankruptcy court found that the Appellant failed to preserve certain records, including tax returns for corporations in which he was a shareholder, FCB documents such as loan information and financial statements, and records with regard to PPI.  On appeal, the Appellant explains that he did not file tax returns for certain corporations when they had losses and he always filed personal tax returns; he disclosed the FCB documents to Appellee's counsel; and he lacked access to PPI's records.

We find that the bankruptcy court did not commit clear error.  As to the corporate tax returns, the Appellant argues that the bankruptcy court could ascertain his financial condition or business transactions through his private tax returns.  However, as the district court noted, the Appellant himself described his personal tax returns as "generalizations."  As such, the bankruptcy court lacked corporate tax returns all together and, in lieu thereof, the Appellant submitted self-

10

described "generalizations" of his personal tax returns. Considering the insufficient records provided by the Appellant, the bankruptcy court did not err in finding that it lacked sufficient information "from which the debtor's financial condition or business transactions might be ascertained. . . ." 11 U.S.C. § 727(a)(3). As to the FCB financial documents, the Appellant contends that he met his obligations by providing said documents to the Appellee's counsel. However, section 727(a)(3) requires disclosure of all relevant records for the benefit of all the creditors and the bankruptcy court. As such, disclosure to one creditor's counsel does not justify failure to preserve records pursuant to section 727(a)(3).[5] Lastly, as to the PPI records, as we determined previously, we find no error in the bankruptcy court's findings that the Appellant continued to exercise control over PPI.

Accordingly, we find that the bankruptcy court did not err when it denied the Appellant a discharge pursuant to section 727(a)(3).

### D. Section 727(a)(2)

Pursuant to section 727(a)(2), a court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed,

---

[5] The Appellant cites no precedent to support his argument that disclosure to one party's counsel is sufficient.

destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition[.]" 11 U.S.C. § 727(a)(2). To successfully object to a discharge under section 727(a)(2), a creditor must establish (1) that the act complained of was done within one year prior to the date the petition was filed and the act was that of the debtor or that the act was done after the date the petition was filed and the act was that of the estate, (2) with actual intent to hinder, delay, or defraud a creditor, and (3) that the act consisted of transferring, removing, destroying, or concealing any of the debtor's property. 11 U.S.C. § 727(a)(2); *Jennings*, 533 F.3d at 1339.

"Since it is unlikely that a debtor will admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct." *Jennings*, 533 F.3d at 1339. "Courts have identified several indicia of fraud that tend to show that a debtor had an actual intent to defraud his creditors," including:

> (1) the lack or inadequacy of consideration for the property received;
> (2) the nature of the relationship between the transferor and the transferee;
> (3) whether the transferor retains possession, control, benefits, or use of the property in question;

12

(4) whether the transfer resulted in insolvency;
(5) the cumulative effect of the debtor's transactions and course of conduct after the onset of financial difficulties or threat of suit by creditors; and
(6) the general chronology and timing of the transfer in question.

*Id.*

The bankruptcy court found that the Appellant transferred the Lake House furnishings and the Pond House to Ms. Protos as well as the security interest in his home to the Weinstock law firm with the intent to hinder, delay, or defraud the Appellee. Here, the Appellant argues that the bankruptcy court committed clear error by finding that he possessed the required fraudulent intent to support a denial of discharge pursuant to section 727(a)(2). First, the Appellant contends that DBI (as opposed to him personally) transferred the Lake House furnishings and the Pond House to Ms. Protos and, assuming *arguendo* that the Appellant transferred the assets, he received adequate consideration in return. And second, the Appellant contends that the grant of a security interest to the Weinstock law firm lacked any fraudulent intent because he merely listed it in the wrong schedule.

Once again, we find that the bankruptcy court did not commit clear error. We have previously determined that the Appellant retained a role in the business of DBI after he transferred the company to Ms. Protos, including his continued use of the furnishings and advising Ms. Protos with regard to lots and development on the

13

Pond House property. Further, the existence of adequate consideration from the Appellant to Ms. Protos represents only one factor to show actual intent to defraud and the Appellant presents no argument as to the remaining factors. As to the security interest owned by Weinstock, we find that the bankruptcy court did not commit clear error by finding fraudulent intent based on the Appellant's disclosure of the same on the wrong schedule, especially in light of the several other erroneous disclosures.

Accordingly, we find that the bankruptcy court did not err when it denied the Appellant a discharge pursuant to section 727(a)(2).

**IV.**

As we noted previously, a finding against the Appellant under any single subsection of section 727 is sufficient to deny him a discharge. *See generally* 11 U.S.C. § 727. Based on the foregoing, we find that the bankruptcy court committed no error in denying the Appellant discharge pursuant to sections 727(a)(2), (a)(3), (a)(4), and (a)(5).

AFFIRMED.